**David J. POWELL and the Estate of Jeane D. Powell, Deceased, David J. Powell, Executor, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–4857.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1990.

Rehearing Denied Feb. 14, 1990.

---

**1168**

Claude R. Wilson, Jr., Golden, Potts, Boeckman & Wilson, Dallas, Tex., for petitioners-appellants.

Bruce R. Ellisen, Gary R. Allen, William S. Rose, Jr., Glenn L. Archer, Jr., Gilbert S. Rothenberg, Asst. Attys. Gen., Tax Div., Dept. of Justice, Peter K. Scott, Acting, Chief Counsel, IRS, Washington, D.C., for respondent-appellee.

Before GOLDBERG, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The Powells appeal the decision of the Tax Court that denied a portion of the fees requested under 26 U.S.C. § 7430 [1], which the Powells incurred in prior litigation before the Tax Court and our court. We conclude that the Tax Court erred in denying fees incurred in the prior appeal before this court and the Tax Court. We also determine that the Tax Court abused its discretion in finding that $75 per hour constituted a reasonable hourly rate for the Powells' attorneys in the Tax Court phase of the case. Accordingly, we reverse and reform the decision of the Tax Court.

---

1. The enactment of § 7430 that applies to the Powells' case is Pub.L. No. 97–248, § 292, 96 Stat. 324, 572–74. This enactment applies to cases commenced after February 28, 1983 through December 31, 1985. *See id.;* Pub.L. No. 99–514, § 1551, 100 Stat. 2752–53. The Powells' case was commenced on March 4, 1983. Subsequent discussion of § 7430 refers to this preamendment version that applies to the Powells' case.

## I. BACKGROUND

David J. Powell and the estate of his deceased wife, Jeane D. Powell, (hereinafter the taxpayers) have been before this court in a prior appeal involving the application of § 7430. A brief review of the facts set out in our prior opinion aids our analysis of later events.

In their previous appeal, the taxpayers contested the Tax Court's rejection of their § 7430 motion for litigation costs, incurred when they sought a redetermination of an IRS deficiency notice regarding their 1977 tax return. The IRS and the taxpayers had settled their dispute by agreeing that the taxpayers' 1977 taxes were overpaid by $238.34. The taxpayers then filed a motion for costs and fees under § 7430, which requires the taxpayer to show that "the position of the United States in the civil proceeding was unreasonable." *See* 26 U.S.C. § 7430(c)(2)(A)(i). The Tax Court rejected the taxpayers' allegations that the Commissioner's pre-petition position was unreasonable on the ground that the taxpayer must establish that the Commissioner's position in litigation, rather than in the underlying administrative proceeding, was unreasonable. *Powell I*, 791 F.2d 385, 388 (5th Cir.1986). We reversed the Tax Court, holding that the determination of the reasonableness of the government's position required consideration of the government's administrative position, because "[t]his reading of § 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate." *Powell I*, 791 F.2d at 392.

On remand, the Tax Court found that the IRS's administrative position was unreasonable and that the taxpayers were entitled to some fees and costs. The Tax Court, however, denied the taxpayers' claim for fees incurred in their first appeal to our court. Despite the fact that we sustained the taxpayers' position, the Tax Court separately evaluated the government's appellate posture on the fees ques-

tion in determining whether appellate expenses should be awarded.

The taxpayers object to the Tax Court's decision to consider the reasonableness of the government's unsuccessful fee position in deciding whether they may recover appellate court fees. The taxpayers also maintain that the Tax Court abused its discretion in denying the requested hourly rate of $200 and by limiting fees to an hourly rate of $75.

## II. SECTION 7430

██ In *Powell I* we stated that our interpretation of "§ 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate." *Powell I*, 791 F.2d at 392. The taxpayers had filed the original motion to recover the fees incurred in responding to the IRS's unreasonable administrative position. Because the Tax Court erroneously rejected the taxpayers' fee request, they had to appeal to our court. We took note of the posture of taxpayer disputes, stating:

> [I]f a taxpayer is forced to resort to litigation by an unreasonable IRS administrative position, § 7430 does not require the captious position to be ignored. The taxpayer must be the plaintiff in Tax Court proceedings. If the IRS takes an arbitrary position and forces a taxpayer to file a suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the cost of suing.

*Powell I*, 791 F.2d at 391–92. We accordingly held that § 7430 should be read to consider the IRS's administrative position "at the time the taxpayer's petition was filed" rather than its later position in litigation.[2]

Nearly seven years after the notice of deficiency was filed against the Powells, and over three years after our first decision in their case, we must decide whether they may recover fees they incurred while litigating the fees question in *Powell I* and

---

**2.** *Id. See also Sher v. C.I.R.,* 861 F.2d 131, 133–34 (5th Cir.1988) (court compared *Powell's* construction of § 7430 and the amended version of § 7430, which requires consideration of

the government's position "after the District Counsel [of the Internal Revenue Service] became involved".) (citing 26 U.S.C. § 7430(c)(4) (Supp.1988).

later proceedings. The Commissioner does not contest that § 7430 allows for recovery of the expenses incurred in litigating the fees issue. The Commissioner does contend, however, that § 7430 requires the taxpayers to show that the Commissioner's position on the fees issue in the appeal was unreasonable before the court can award fees for fees. The taxpayers maintain that the Commissioner's position in the fee application should not be evaluated separately from the merits, because an unreasonable administrative position forced the taxpayer to file a lawsuit in the first place.

We have found no cases addressing this precise issue under § 7430. Nevertheless, several circuits have considered the question of awarding fees for fee litigation under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). In *Powell I* we noted the similarity between § 2412 and § 7430 and accordingly analogized to the EAJA to aid our construction of the phrase "position of the United States." *Powell I*, 791 F.2d at 390 ("Several courts have, therefore, looked to the similar provisions of the EAJA in determining whether the IRS's prelitigation position should be considered.") (footnote omitted). It is similarly helpful to review how the fees for fees issue has been decided under the EAJA.

## A. Per Se Fee Shifting Rule

Several circuits have adopted a rule that limits the government's ability to oppose an EAJA fee request for expenses incurred in EAJA litigation. One of the most persuasive of these is the *Trichilo* decision. *See Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702, 708 (2d Cir.1987) (*Trichilo I*); *Trichilo v. Secretary of Health and Human Services*, 832 F.2d 743, 745 (2d Cir.1987) (*Trichilo II*). In *Trichilo I*, Trichilo requested fees under the EAJA for the expenses incurred in his dispute against the government. Trichilo subsequently requested fees incurred while "responding to the government's opposition to the fee application." *Trichilo I*, 823 F.2d at 704. The district court awarded Trichilo fees for the time requested, including the time spent litigating the fee application. *Id.* at 707. On appeal, the government argued that no fees should be awarded for fees litigation unless the "government's position on the fees question is not substantially justified...." *Id.*

The court rejected the argument posed by the government for several reasons. The court reasoned that a plaintiff's fee recovery should include counsel's time spent litigating the fee issue itself where the government's position in the underlying dispute was determined to be, or "conceded to be" not substantially justified. *Id.* The policy of the EAJA would be undermined if a plaintiff who prevailed on the merits against a government position that was not substantially justified could recover fees for the underlying litigation, but not for the expenses in litigating the fee issue.[3] The Second Circuit also found persuasive the fact that the EAJA amendments direct the court to consider the government's underlying administrative position rather than focusing solely on the litigating position. *Trichilo I*, 823 F.2d at 708 (discussing 28 U.S.C. § 2412(d)(2)(D)).

In *Trichilo II*, the court awarded the plaintiff fees and expenses incurred on the government's appeal of the district court's EAJA award without determining whether the government's appellate position was substantially justified. *Trichilo II*, 832 F.2d at 744–45. The court ruled similarly to *Trichilo I* and held that where "the government's underlying substantive position was not 'substantially justified', the plaintiff is entitled to recover all reasonable attorney's fees incurred." *Id.* (citing *Trichilo I*). *See also McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468, 1480–81 (1st Cir.1989) (court affirmed award of fees for fee application, fee litigation and authorized fees for appeal on the ground that the government's underlying

---

**3.** *Id.* This anomalous result could occur where the government's argument in opposing fees is substantially justified although its position on the merits, which precipitated the litigation, was not substantially justified. *See, e.g., Cornella v.*

*Schweiker*, 741 F.2d 170, 172 (8th Cir.1984) (court denied fees incurred by social security claimant in successful appeal of fees question because government's position on fees issue was reasonable).

administrative position was not substantially justified); *Jean v. Nelson,* 863 F.2d 759, 780 (11th Cir.1988) (court refused to allow government to "oppose a 'fees for fees' request solely on the ground that its position in the fee litigation was substantially justified").[4]

A private citizen's incentive to vindicate his rights through EAJA or § 7430 litigation would be much reduced if, after prevailing on the merits against a government position that was not substantially justified and prevailing in the fee dispute, he could not obtain fees for the fee dispute because the government's fee position there was "substantially justified". The governments' proposed interpretation of the fee-shifting statutes imposes no cost to it upon continuing fee litigation, while the mere threat of prolonged, un-reimbursable proceedings could discourage EAJA and § 7430 plaintiffs. Additionally, an interpretation of the EAJA that prevents the government from opposing fees for fees by arguing it was substantially justified on the issue of fees alone effectuates the Supreme Court's warning that a "request for attorney's fees should not result in a second major litigation." *See McDonald,* 884 F.2d at 1481 (citing *Pierce v. Underwood* ). Our panel is convinced that *Trichilo* represents the proper approach to the "fees for fees" issue in EAJA and § 7430 litigation.

**B.  Separate Review of Fee Proceedings**

Nevertheless, other circuits considering requests of fees for fee disputes evaluate the government's fee position independently from its position on the merits, despite the fact that the government's underlying position on the merits was unreasonable.[5] These circuits have interpreted the EAJA as permitting the government to defend fees for fees by claiming that its fee position was substantially justified. The Commissioner urges that our court is among those that separately evaluate the reasonableness of the government's fee position in considering requests of fees for fees. *See Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985).

This court briefly discussed the fees for fees question in two cases: *Russell v. National Mediation Board (Russell I),* 775 F.2d 1284 (5th Cir.1985); *Russell v. National Mediation Board (Russell II),* 805 F.2d 552 (5th Cir.1986) (*per curiam* ). In *Russell I,* this court held that the phrase "position of the United States" in the EAJA encompasses the government's position during administrative proceedings and litigation. While discussing whether to remand the case to determine a proper fee award, we noted that certain cases holding that fees may be apportioned when the government's litigation position is substantially justified to some claims but not others did not apply to the case before us. In

---

**4.** A variation in this approach appears from the D.C. Circuit. In *Cinciarelli v. Reagan,* 729 F.2d 801, 809 (D.C.Cir.1984), the court "indicated a preference for the *per se* fee-shifting rule" where the government opposes reimbursing fees for a fee dispute. *See American Academy of Pediatrics v. Bowen,* 795 F.2d 211, 213 (D.C.Cir.1986) (discussing *Cinciarelli*). In *American Academy,* the D.C. Circuit considered whether the *per se* fee shifting rule should apply where the government opposes fees for fee litigation by arguing that it was substantially justified in raising a technical defense, such as untimely filing of the EAJA motion, to the fees request. *American Academy of Pediatrics,* 795 F.2d at 213. The court stated that if the government raises a technical defense to an EAJA application, it can defend against the subsequent "application for fees incurred in connection with litigating the technical defense, that the technical defense was substantially justified." *Id.* If the government loses, the *per se* rule then applies and "the

government may not argue that it was substantially justified in arguing that it was substantially justified in raising the technical defense." *Id.* We are not asked to consider the "technical defense" variation here.

**5.** *See, e.g., United States v. Estridge,* 797 F.2d 1454, 1459-60 (8th Cir.1986) (court held that "the government was not substantially justified in appealing the district court's EAJA award"); *Cornella v. Schweiker,* 741 F.2d 170, 171, 172 (8th Cir.1984) (court determined "that the Secretary's position in resisting an award of fees, as opposed to her position in denying disability benefits, was reasonable, ..."); *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984) (although government's position in underlying litigation was not substantially justified, court examined the reasonableness of the government's unsuccessful position on appeal of legal fees issue and held that the government was substantially justified in raising unsettled issues).

a footnote appended to this statement we wrote:

> Cf. *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). In *Rawlings*, the Ninth Circuit found that the government's position on the merits was not substantially justified, but that its appeal of the district court's order awarding fees under the EAJA was substantially justified. We agree with the Ninth Circuit that for purposes of apportioning attorney fees, the EAJA fee application may be severed from the proceedings on the merits. Although we do not understand Russell to seek attorney fees for his fee application, we note in case the issue should arise on remand that the government's position in the fee application proceeding is substantially justified, in light of the uncertainty surrounding the phrase "position of the United States" and the retroactive effect of Pub.L. No. 99–80. *See Rawlings*, 725 F.2d at 1196.

*Russell I*, 775 F.2d at 1291, n. 8. As this footnote acknowledges, Russell did not raise the fees for fees question before the court in *Russell I*. Instead, the *Russell I* court reached out and decided an issue not before it in order to economize judicial resources—a laudable goal.

Russell did not ask the *Russell I* court to reconsider its discussion of the fees for fees issue. However, Russell applied to the district court for fees on remand. The district court refused to award fees for fees. Russell then appealed. This court in *Russell II* refused to consider the fees for fees issue. The entire opinion states:

> In an obvious effort to avoid further litigation over fees in this case, this court in *Russell v. National Mediation Board,* gave express instructions to the district court concerning determination of the issue of recovery of attorney's fees should that issue arise on remand. No application for reconsideration of that opinion was filed. The district court followed our instructions to the letter. While the instructions may have been dicta, they were purposive, designed to prevent the request for attorney's fees from resulting in a second major litigation. We may have power to reopen the matter, but we

decline to do so. Accordingly, the judgment of the district court is AFFIRMED.

*Russell II*, 805 F.2d at 552 (footnotes omitted). In *Russell II*, this court refused to consider the fees for fees issue because our prior decision had addressed the issue specifically. What the parties should have done, *Russell II* opined, was to apply for reconsideration of the opinion in *Russell I*. They did not. The court in *Russell II* observed that it "may have power to reopen the matter," but it chose not to do so. Thus, *Russell II's* disposition of the fees for fees issue turns on a procedural defect. *Russell I's* disposition of the fees for fees issue turned on the court's deciding an issue not before it. We do not view either *Russell* case as precluding our consideration of the issue on the merits the first time it has been squarely presented to us.

We are persuaded by the rule in *Trichilo I* and *Trichilo II* that "where the government's underlying position is not substantially justified, plaintiff is entitled under the EAJA to recover all attorney's fees and expenses reasonably incurred in connection with the vindication of his rights, including those related to any litigation over fees, and any appeal." *Trichilo II*, 832 F.2d at 745. *But see supra* note 4. In this case, the Tax Court found that the Commissioner's final administrative position, which precipitated the Tax Court and appellate litigation, was unreasonable under § 7430. *Powell v. CIR*, 91 T.C. 673 (1988). This determination by the Tax Court is not an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2546, 2549, 101 L.Ed.2d 490 (1988). We now hold that the taxpayers are entitled to an award of reasonable litigation costs for the time spent and expenses incurred in the appeal of *Powell I* and subsequent fees litigation resulting from the Commissioner's administrative position. We will reform the judgment of the Tax Court to reflect an award of appellate fees and expenses after deciding the issue involving a reasonable hourly rate.

## III. REASONABLE ATTORNEYS' FEES

The taxpayers' second contention is that the Tax Court erred in determining that

$75 per hour was a reasonable rate for their attorney's fees in the Tax Court. The Tax Court rejected the Powells' requested rate of $200 per hour for the 51 hours of compensable time spent filing the petition, settling the case, and seeking fees under section 7430, finding that the work was "routine in nature," the work "did not include any complex, difficult or novel questions", and the form of some of the Powells' documents was incorrect. The court awarded total fees of $3,825.00.

■ The enactment of § 7430 that governs this case does not limit the hourly rate to a specific number, but rather places a cap of $25,000 on the maximum amount of litigation costs that may be awarded. *See* 26 U.S.C. § 7430(b)(1).[6] The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable. *See Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (discussing determination of reasonable rate under § 1988). A reasonable attorney's fee is the product of the reasonable hours incurred times the reasonable rate. *See Chemical Mfrs. Ass'n v. U.S.E.P.A.,* 885 F.2d 1276, 1280 (5th Cir.1989) (applying formula for § 1988 reasonable attorney's fee to fee award under Clean Water Act, 33 U.S.C. § 1369(b)(3) (1982 & Supp. V 1987). The reasonableness of the requested rate can be proved by evidence that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" and by the "attorney's own affidavits." *Blum,* 465 U.S. at 89–96 n. 11, 104 S.Ct. at 1547 n. 11; *see also Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1073 (5th Cir.1985) (court held that district court's finding of $75 per hour for attorney's fees was too low in light of plaintiff's evidence, which included affidavit and other evidence of comparable fee awards in the community).

■ The Tax Court's determination of a " 'reasonable hourly rate' is a finding of fact subsidiary to the ultimate award and is, therefore, reviewable under the clearly-erroneous rubric." *Islamic Center of Mississippi v. City of Starkville,* 876 F.2d 465, 468 (5th Cir.1989) (reviewing reasonableness of hourly rate for § 1988 fee award) (footnote omitted). In this case, the Tax Court did not explain any evidentiary basis for its determination that the hourly rate should be limited to $75 per hour. The only evidence in the record, apart from the Powells' attorney's itemized statements, consisted of testimony by their expert witness, a practitioner in Dallas. The expert verified that tax attorneys with skill and experience comparable to that of the Powells' counsel, including nearly twenty years of tax litigation experience, would ordinarily charge hourly rates exceeding $150 during the period in question. Tax practice is a specialty area in which relatively few attorneys participate. The Tax Court observed, as justification for its reduction of the hourly rate to $75, that this case involved a "rather routine tax shelter settlement." This may be true in certain quarters, but it is also true that "routine" services of this nature are not provided at "routine" legal rates. We find the Tax Court's reasoning at odds with the evidence in the case and insupportable. In *Islamic Center of Mississippi, supra,* ruling on a § 1988 fee application, this court held:

> When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. *When that rate is not contested, it is prima facie reasonable.*

876 F.2d at 469 (footnote omitted) (emphasis added). The IRS did not challenge the Powells' attorneys' rates with admissible evidence.[7] According to *Islamic Cen-*

---

**6.** This section was later amended to limit attorney's fees by providing that reasonable attorney's fees shall not exceed "$75.00 per hour unless the court determines that ... a special

factor ... justifies a higher rate." *See* 26 U.S. C.A. § 7430(c)(1)(B)(iii) (West 1989).

**7.** The IRS argues that Mr. Flagg, the expert witness, did not actually opine on the customary

*ter*, those rates must prevail. Therefore, we must reverse and reform the judgment of the Tax Court. Our figure includes the 51 hours of compensable time spent in the Tax Court before *Powell I* as well as the fees generated by more than 200 hours of services related to the *Powell I* litigation. The Powells' fee application reflected legal bills of nearly $47,000 for services extending through *Powell I*. Apart from the hourly rate, the IRS did not contest the reasonableness of the fee. Thus, applying the hourly rates, as actually billed, the taxpayers are entitled to the statutory maximum amount of $25,000 for reasonable litigation costs pursuant to § 7430(b)(1).

For the foregoing reasons, the judgment of the Tax Court is REVERSED and RE-FORMED.

rates that would be charged in litigation before the Tax Court in a case like this. His testimony, it is asserted, was based only on the fee records covering the prior Fifth Circuit appeal. Even if so limited, we find the testimony fully probative for tax litigation in general at the time and place under consideration. The Tax Court did not find Flagg's testimony irrelevant for this reason. It was simply ignored.