**Scott P. AIJO, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 90–258 C, 90–630.**

United States Claims Court.

July 2, 1992.

Lawrence J. Sherman, Washington, D.C., for plaintiffs.

Deborah A. Bynum, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and James M. Kinsella, Washington, D.C., for defendant. Suzanne L. Wilson, Bureau of Engraving and Printing, Washington, D.C., of counsel.

**1.** In *Henderson v. United States,* 17 Cl.Ct. 180 (1989), the Claims Court found that the Treasury Department had abused its discretion under 5 U.S.C. § 5349(a) when it declined, in 1984, to grant BEP siderographers a catch-up pay increase. The *Henderson* plaintiffs, like those in the instant cases, had incurred government-imposed pay caps limiting their 1983 pay raises, which had been tied to pay increases in private industry. The Treasury Department had denied increases for both groups of plaintiffs based upon the fact that there had not been a 1984 pay increase in the private sector.

**2.** Plaintiffs base their request for attorney fees on the Back Pay Act, 5 U.S.C. § 5596(b). Defendant concedes entitlement to fees under the Back Pay Act. Because neither party has expressed concern over the appropriateness of

OPINION and ORDER

JAMES T. TURNER, Judge.

Plaintiffs filed an application for an award of reasonable attorney fees pursuant to RUSCC 81(e) and the Back Pay Act, 5 U.S.C. § 5596(b). Defendant concedes plaintiffs' entitlement to reasonable attorney fees but contests the amount requested.

I

Plaintiffs are 187 plate printers and plate printer apprentices employed by the Bureau of Engraving and Printing (BEP). Plaintiffs initiated this litigation on March 26, 1990, claiming entitlement to back pay based on the holding of *Henderson v. United States,* 17 Cl.Ct. 180 (1989).[1] Plaintiffs moved for summary judgment on liability issues on August 23, 1990. On January 17, 1991, in response to plaintiffs' motion, defendant conceded plaintiffs' entitlement to a catch-up wage adjustment of one percent retroactive to 1984. On October 16, 1991, pursuant to RUSCC 54(b), judgment was entered for the principal of back pay owed to each plaintiff; on March 4, 1992, judgment was entered for interest on the back pay amounts.

On April 4, 1992, plaintiffs filed this fee application. Defendant concedes plaintiffs' entitlement to an award of attorney fees pursuant to 5 U.S.C. § 5596(b).[2] Def.Opp. at 5.[3] The parties also agree upon the

awarding fees in the context of these cases pursuant to the Back Pay Act and because a similar result would most likely occur had plaintiffs grounded their fee request on the Equal Access to Justice Act, 28 U.S.C. 2412(d), we have not, *sua sponte,* raised the issue for argument.

**3.** The following abbreviations for document references are used in text:

"Pl.App." refers to Plaintiffs' Application for an Award of Reasonable Attorney Fees, filed April 2, 1992.

"Def.Opp." refers to Defendant's Opposition to Plaintiffs' Application for an Award of Reasonable Attorney Fees, filed May 26, 1992.

"Pl.Rep." refers to Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Application for an Award of Reasonable Attorney Fees, filed June 22, 1992.

lodestar formula to calculate the amount of the award, i.e., hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Moreover, plaintiffs do not seek an upward adjustment of this lodestar amount. Pl.App. at 2. However, the parties disagree on the specific amount of the award. In particular, the parties disagree on (1) the appropriate hourly rates to be used and (2) the total of compensable hours expended by plaintiffs' attorney.

Concerning hourly rates, plaintiffs assert that calculations of attorney-fee awards should use the "prevailing market rate." Plaintiffs maintain that appropriate hourly rates for these cases are $175 for attorney services in 1990, $185 for attorney services in 1991 and 1992, and $65 for all services performed by law clerks. Defendant asserts that plaintiffs should be limited to the rates originally agreed upon in a retainer agreement dated January 5, 1990: $110 per hour for attorneys and $55 per hour for law clerks. Defendant would permit no adjustment of these rates, even as a result of inflation.

The parties are more nearly in agreement regarding the total hours expended on this litigation. However, defendant alleges that certain hours claimed by plaintiffs (5.75 hours of attorney time and 1.25 hours of law clerk time) were rendered on behalf of two BEP plate printers who were not plaintiffs in these cases. (See Def.Opp. at 18–19 for list of specific hours). Plaintiffs acknowledge that these two employees were never parties to these suits. However, plaintiffs argue that the two employees could have joined the pending cases or initiated their own independent action.

## II

Since the defendant does not contest liability for attorney fees, we are concerned only with the proper measure of recovery for such fees under the Back Pay Act, 5 U.S.C. § 5596(b).[4]

A request for attorney fees should not result in a second major litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Where settlement by the parties is not possible, a court has discretion to determine the amount of a fee award. *Id.* The most useful starting point for determining a reasonable fee is to multiply the hours reasonably expended by a reasonable hourly rate. *Id.* at 433, 103 S.Ct. at 1939. The product of such calculation is often referred to as the "lodestar" amount. The purpose of awarding attorney fees is to attract competent counsel, not to produce windfalls for attorneys. *See Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (addressing attorney-fee awards under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988).

More specifically, the policy of the attorney-fees provision of the Back Pay Act, 5 U.S.C. § 5596(b), is that only attorney fees actually incurred shall be awarded. *Naekel v. Department of Transp.,* 845 F.2d 976, 980 (Fed.Cir.1988). The purpose of fee awards authorized by the Back Pay Act is to make the prevailing party financially whole. *Id.* As the statute requires, any fee award is made to the prevailing party and not the attorney. *Phillips v. General Servs. Admin.,* 924 F.2d 1577, 1582 (Fed. Cir.1991); *see also FDL Technologies, Inc. v. United States,* 967 F.2d 1578, 1580 (Fed. Cir.1992) (Equal Access to Justice Act, 5 U.S.C. § 504(a)(1), requires that "prevailing party, and not its attorney, is entitled to

---

**4.** The Back Pay Act, 5 U.S.C. § 5596(b)(1), provides in pertinent part:

An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action

which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

. . . .

(ii) *reasonable attorney fees related to the personnel action* . . . .

(Emphasis added.)

receive the fee award"). Moreover, the policy of the statute is to pay non-enhanced fees for legal services actually rendered. *Phillips*, 924 F.2d at 1583.

## A

### *Hourly Rates*

■ Rather than adopt either parties' suggested hourly rates, we conclude that

rates used to calculate the lodestar amount should be those actually billed to the clients by their attorney. Our review of the billing records submitted by plaintiffs reveals that during the period relevant to this case, plaintiffs were billed at the following rates:

| Dates: | Attorney Services ($/hr.) | Law Clerk Services ($/hr.) |
|---|---|---|
| Apr. 1990–Sep. 1991 | 110 | 55/45 |
| Oct. 1991–pres | 125 | 55/45 |

*See* Pl.App. Appendix C and Pl.Rep. Exhibit D; *see also* Appendix A to this opinion. Although we are not bound by the attorney's records in determining reasonable hourly rates, we believe that the rates actually billed are reasonable and have used them in calculating the lodestar amount. *See* Appendix A.

Plaintiffs argue that the court should disregard the rates actually billed and award fees based on the prevailing market rate. Simply put, plaintiffs seek to apply one rate when plaintiffs are paying their attorney and a second rate approximately 50% greater when the government is paying for the same services. We decline to adopt this approach since the purpose of awarding attorney fees in the context of these cases is to make the prevailing party whole. *See Naekel*, 845 F.2d at 980.

Plaintiffs rely on cases in which courts have in specific instances used market hourly rates to calculate attorney fees.[5]

However, plaintiffs cite no controlling authority to support their position and ignore controlling authority from the Federal Circuit explicitly rejecting use of market rates for attorney-fee awards pursuant to the Back Pay Act and the Equal Access to Justice Act, 28 U.S.C. § 2412(d). *See Naekel*, 845 F.2d at 980; *Devine v. National Treasury Employees Union*, 805 F.2d 384, 388 (Fed.Cir.1986); *Goodrich v. Department of the Navy*, 733 F.2d 1578, 1580–81 (Fed.Cir.1984). The Federal Circuit has explicitly held that government liability for attorney fees under the Back Pay Act and the Equal Access to Justice Act does not arise in cases where public policy warrants substituting market hourly rates for rates actually charged. *See Naekel*, 845 F.2d at 980; *Devine*, 805 F.2d at 388; *Goodrich*, 733 F.2d at 1580–81. In *Devine*, the Federal Circuit stated:

> [W]e do not find [congressional intent] ... that regardless of whether the attorney on the case charges less than the

5. Plaintiffs rely heavily on *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988) (en banc), for the proposition that the full market rate should be substituted for the lower hourly rates actually billed to the client. In *Save Our Cumberland Mountains*, the D.C. Circuit applied the higher market rate on public policy grounds. The D.C. Circuit was concerned about a possible anomaly, i.e., that both highly paid commercial law firms and legal aid attorneys could receive awards based on prevailing rates of the highest paid firms, while attorneys whose practice consists of some ele-

ments of each of these groups might receive awards significantly less. 857 F.2d at 1520. To avoid this potential anomaly, the court created a new rule, holding that the prevailing market rate would also apply to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals. *Id.* at 1524. However, we concur with Judge Starr's dissent indicating that the statutory purpose of awarding attorney fees is to provide a party with competent counsel, not to subsidize the legal profession. *See id.* at 1525–1534 (Starr, J., dissenting).

prevailing market rate that that attorney should nonetheless receive the prevailing market rate....

Different concerns exist when awarding attorney fees in civil rights cases where encouraging private attorneys general to come forth and challenge governmental abuses is undeniably an important concern....

805 F.2d at 388 (citations omitted). *See also Johnson v. United States,* 16 Cl.Ct. 321 (declining to use prevailing market rate to boost fees), *aff'd without opinion,* 889 F.2d 1100 (1989).

## B

### *Hours Expended*

■ As indicated, the only disagreement over the time expended concerns hours claimed by plaintiffs for work performed for plate printers who were not plaintiffs. The Supreme Court has indicated that a court should exclude from fee calculations hours that were not "reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. Work performed by plaintiffs' attorney to benefit individuals who were never a party to these cases, even though they could have been, is not deemed reasonably expended *in these cases.* Attorney fees are awarded to the parties, not the attorney. *Phillips,* 924 F.2d at 1582; *FDL Technologies,* at 1580. Therefore, we conclude that these disputed hours should not be compensated in this litigation. *See* Appendix B.

## III

Based on the foregoing and upon the calculations set forth in Appendices A and B to this opinion, it is ORDERED that plaintiffs shall be awarded attorney fees in the amount of $17,615. Judgment shall be entered accordingly.

## APPENDIX A

The following is a summary of the billing records of plaintiffs' attorney relevant to these cases. *See* Pl.App. Appendix C, and Pl.Rep. Exhibit D.

| BILLING DATE | PERSON | TIME (hrs.) | RATE ($/hr.) | TOTAL/PERSON ($) | TOTAL/DATE ($) |
|---|---|---|---|---|---|
| 4/11/90 | LJS | 10 | 110 | 1,100 | |
| | BAN | 7.5 | 55 | 412.50 | |
| | | | | | 1,512.50 |
| 6/10/90 | LJS | 3.5 | 110 | 385 | |
| | BAN | 26.75 | 55 | 1,471.25 | |
| | | | | | 1,856.25 |
| 7/5/90 | LJS | 1.5 | 110 | 165 | |
| | BAN | 21.75 | 55 | 1,196.25 | |
| | | | | | 1,361.25 |
| 8/8/90 | LJS | 1.75 | 110 | 192.5 | |
| | BAN | 25.5 | 45 | 1,147.50 | |
| | | | | | 1,340 |
| 9/5/90 | LJS | 12.75 | 110 | 1,402.50 | |
| | BAN | 7.0 | 45 | 315 | |
| | | | | | 1,717.50 |
| 10/8/90 | — | — | — | — | — |
| 1/8/91 | LJS | .25 | 110 | 27.50 | |
| | | | | | 27.50 |
| 2/4/91 | LJS | .75 | 110 | 82.5 | |
| | | | | | 82.5 |
| 3/7/91 | LJS | 1.5 | 110 | 165 | |
| | | | | | 165 |
| 5/10/91 | LJS | 4.5 | 110 | 495 | |
| | BAN | 7.75 | 45 | 348.75 | |

| BILLING DATE | PERSON | TIME (hrs.) | RATE ($/hr.) | TOTAL/PERSON ($) | TOTAL/DATE ($) |
|---|---|---|---|---|---|
| | | | | | 843.75 |
| 6/5/91 | LJS | 18 | 110 | 1,980 | |
| | BAN | 2.75 | 45 | 123.75 | |
| | | | | | 2,103.75 |
| 7/3/91 | LJS | 1.75 | 110 | 192.50 | |
| | | | | | 192.50 |
| 8/5/91 | LJS | .75 | 110 | 82.5 | |
| | | | | | 82.5 |
| 9/9/91 | LJS | 1.5 | 110 | 165 | |
| | BAN | 1.75 | 45 | 78.75 | |
| | | | | | 243.75 |
| 10/4/91 | LJS | 1 | 125 | 125 | |
| | BAN | .25 | 55 | 13.75 | |
| | | | | | 138.75 |
| 11/8/91 | LJS | 12 | 125 | 1,500 | |
| | BAN | 4 | 55 | 220 | |
| | BAN | .5 | (no charge) | 0 | |
| | LRB | 3 | 45 | 135 | |
| | | | | | 1855 |
| 12/2/91 | LJS | 4 | 125 | 500 | |
| | BAN | .25 | 55 | 13.75 | |
| | LRB | .5 | 45 | 22.5 | |
| | | | | | 536.25 |
| 6/9/92 | LJS | 21 | 125 | 2,625 | |
| | | | | | 2,625 |
| 7/2/92 | LJS | 13.75 | 125 | 1,718.75 | |
| | | | | | 1,718.75 |
| TOTAL | | | | | 18,402.50 |

## APPENDIX B

The following is the calculation of awardable attorney fees (total fees billed minus fees charged for services benefitting two BEP employees not parties to these suits):

Total attorney fees billed to plaintiffs (*See* Appendix A)............... 18,402.50

Hours charged for services not compensated
   —LJS services Oct.—Nov. 1991
      5.75 hrs. × 125 $/hr......................................... − 718.75
   —BAN services Oct. 1991
      1.25 hrs. × 55 $/hr.......................................... − 68.75

TOTAL Attorney fees Award ................................... 17,615.00